IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JEFFREY L. HOLT, JR., | Case No. |
| Plaintiff, | |
| -v- | COMPLAINT AND DEMAND FOR JURY TRIAL |
| CITY OF LINCOLN, NEBRASKA; AYARS AND AYARS, INC.; JOSHUA GOSSARD; DREW CROMWELL; MEGAN NELSON; NOLAN HAUSER; ANDREW RIPLEY; RANDALL CLARK; JAYDN FOSTER, and TREVOR SCHMIDT (individuals being sued in their individual capacity), | |
| Defendants. | |

## COMPLAINT

**COMES NOW**, Plaintiff, Jeffery L. Holt, Jr., by and through his counsel of record, Oluseyi O. Olowolafe of Olowolafe Law Firm, LLC, alleges and states as follows:

## NATURE OF THE ACTION

1.      This lawsuit arises out of statements made by Drew Cromwell and Joshua Gossard, Ayars and Ayars, Inc. employees, after Holt exercised his First Amendment rights, ultimately leading to Holt's false arrest and malicious prosecution. As a result, Law Enforcement Officers violated Holt's rights by engaging in a conspiracy to seize Holt, conspiring against Holt's right to bear arms, retaliating for exerting his First Amendment rights, unlawfully seizing Holt's firearm without a warrant or probable cause, and falsely arresting Holt pursuant to an official policy or unofficial custom of the City of Lincoln police department.

2.      Plaintiff seeks monetary damages for: (1) false arrest in violation of the Fourth and Fourteenth Amendments to the United States Constitution; (2) unlawful seizure of property

without probable cause or warrant in violation of the Fourth and Fourteenth Amendments to the United States Constitution; (3) conspiracy to commit false arrest and false imprisonment in violation of the Fourth and Fourteenth Amendment to the United States Constitution; (4) conspiracy against the right to bear arms in violation of the Second and Fourteenth Amendment to the United States Constitution; (5) retaliation for exercising First Amendment Rights in violation of the First and Fourteenth Amendment of the United States Constitution; (6) malicious prosecution in violation of the Fourth and Fourteenth Amendment of the United States Constitution; (7) the false arrest, conspiracy to commit false arrest, conspiracy to seize property, unlawful seizure of property, malicious prosecution, and retaliation for exercising first amendment rights were pursuant to an official policy or unofficial custom of the City of Lincoln Police Department in violation of the Fourteenth Amendment to the United States Constitution; (8) the laws of the State of Nebraska in violation of the Mental Health Commitment Act NEB. REV. STAT. §71-962; (9) Defamation; and (10) Malicious Prosecution.

## JURISDICTION & VENUE

3.      This action is brought pursuant to 42 U.S.C. § 1983, and the First, Second, Fourth, and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction over the claims in this Complaint pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. §§ 1983, 1985, and 1988.

4.      This Court also exercises supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as the events giving rise to Holt's claims occurred in Lancaster County, Nebraska, and pursuant to 18 U.S.C. § 1965.

## PARTIES

6.      Plaintiff Jeffery L. Holt, Jr. is a citizen of the United States and resides in Lincoln, Nebraska.

7.      Defendant City of Lincoln is a local public municipal entity under the laws of the State of Nebraska.

8.      Defendant Ayars and Ayars, Inc. ("Ayars") is a Nebraska corporation duly organized under the laws of the State of Nebraska, and transacting business in Lincoln, Lancaster County, Nebraska.

9.      Defendant Joshua Gossard ("Gossard") is believed to be a citizen of the United States and resides in Lincoln, Nebraska. Gossard was, at all times relevant herein, a construction supervisor employed by Ayars, and was acting within the scope of his employment at all times of the incidents giving rise to the causes of action laid out in this Complaint He is sued in his individual capacity.

10.     Defendant Drew Cromwell ("Cromwell") is believed to be a citizen of the United States and resides in Lincoln, Nebraska. Cromwell was, at all times relevant herein, the Construction Safety Director employed by Ayars, and was acting within the scope of his employment at all times of the incidents giving rise to the causes of action laid out in this Complaint. He is sued in his individual capacity.

11.     Defendant Megan Nelson ("Nelson") was, at all times relevant herein, an officer for the City of Lincoln Police Department, acting within the scope of her employment at the times of the incidents giving rise to the causes of action laid out in this Complaint. Nelson acted and continued to act under the color of law in the State of Nebraska at all times relevant to this Complaint. She is sued in her individual capacity.

12.     Defendant Nolan Hauser ("Hauser") was, at all times relevant herein, an officer for the City of Lincoln Police Department, acting within the scope of her employment at the times of the incidents giving rise to the causes of action laid out in this Complaint. Hauser acted and continued to act under the color of law in the State of Nebraska at all times relevant to this Complaint. He is sued in his individual capacity.

13.     Defendant Andrew Ripley ("Ripley") was, at all times relevant herein, an officer for the City of Lincoln Police Department, acting within the scope of her employment at the times of the incidents giving rise to the causes of action laid out in this Complaint. Ripley acted and continued to act under the color of law in the State of Nebraska at all times relevant to this Complaint. He is sued in his individual capacity.

14.     Defendant Randall Clark ("Clark") was, at all times relevant herein, an officer for the City of Lincoln Police Department, acting within the scope of her employment at the times of the incidents giving rise to the causes of action laid out in this Complaint. Clark acted and continued to act under the color of law in the State of Nebraska at all times relevant to this Complaint. He is sued in his individual capacity.

15.     Defendant Jaydn Foster ("Foster") was, at all times relevant herein, an officer for the City of Lincoln Police Department, acting within the scope of her employment at the times of the incidents giving rise to the causes of action laid out in this Complaint. Foster acted and continued to act under the color of law in the State of Nebraska at all times relevant to this Complaint. He is sued in his individual capacity.

16.     Defendant Trevor Schmidt ("Schmidt") was, at all times relevant herein, an officer for the City of Lincoln Police Department, acting within the scope of her employment at the times of the incidents giving rise to the causes of action laid out in this Complaint. Schmidt acted and

continued to act under the color of law in the State of Nebraska at all times relevant to this

Complaint. He is sued in his individual capacity.

17.   The deprivation of Holt's constitutional rights is set forth in the following

statements of facts and causes of action.

## STATEMENTS OF FACT

18.   On September 24, 2021, Holt arrived at the Paramount Linens located at 837 South

27th Street, Lincoln, Nebraska, to check on the status of his application and to check out the electric

bikes at the Speedy Pete's E-bike store.

19.   Holt entered the premises through the back alley that was adjacent to Paramount

Linens and Speedy Pete's E-Bike store.

20.   After entering the alley, Holt stopped his vehicle after seeing Gossard's truck.

21.   Holt parked his vehicle roughly 10 feet away from Gossard's truck to determine

whether Gossard was actually in his truck.

22.   Upon realizing Gossard was sitting in his truck, Holt then exited his vehicle.

23.   Holt immediately lifted the mask he had been wearing while driving his vehicle to

to the top of his head as he approached Gossard's vehicle.

24.   As Holt approached Gossard's vehicle, Holt's face was completely visible, and Holt

motioned for Gossard to roll down his window.

25.   Holt further was telling Gossard to get out of the vehicle because he wanted to talk

to Gossard.

26.   Gossard eventually exited his truck and stood on the opposite side of his truck bed

while Holt attempted to talk to him about why he lied to get him fired from his position at Ayars.

27.   Gossard gave no response to Holt's attempt to speak to him.

28.     At no time did Holt threaten Gossard with any bodily harm, nor point any weapon at Gossard.

29.     Gossard was not bothered by any of the things that Holt said to him.

30.     Holt eventually went back to his car and closed the door.

31.     At that time, Christian Chavez ("Chavez"), an employee of Ayars, walked up to Holt's vehicle to speak with Holt.

32.     Chavez observed that Holt placed a firearm on his lap, and told Holt that he needed to leave and that he didn't want Holt to get into trouble.

33.     Holt informed Chavez that he was not there to cause any trouble, and then proceeded to drive down the alley and park his car.

34.     Holt then proceeded to visit Speedy Pete's E-Bike store and Paramount Linens.

35.     While Holt was visiting the stores, Chavez reported to Gossard that he saw Holt with a firearm.

36.     Gossard then called 911 and reported that Holt pulled up with a mask on, started yelling at him, and another person saw that Holt had a firearm in his car.

37.     Gossard further stated that Holt has "fucking issues," that he believes Holt has "mental issues," that Holt talks to himself.

38.     Officers Nelson, Hauser, Clark, Ripley, Foster, and Schmidt all responded to Gossard's call.

39.     Upon arriving on the scene, Schmidt observed Holt's car was unlocked and the passenger window was down.

40.     Schmidt further observed Holt had a backpack, knee pads, a backpack, a bullhorn, and a firearm on the car's passenger seat.

-6-

41.     While observing the contents of the car, Holt began approaching the car from Paramount Linens.

42.     As Holt was walking to his car, Schmidt engaged with Holt and conducted a pat down of Holt's person.

43.     While Schmidt was engaging with Holt as to why he was responding to the area, Nelson, Foster, and Ripley took statements from Gossard, Christian Chavez, and Cole Kirchhoff.

44.     Gossard stated he was in his truck coming back from lunch when he watched Holt's car came up the alley.

45.     Gossard further stated that Holt got out the car with a mask on and started yelling at him and calling him names.

46.     Gossard confirmed that he was not bothered by anything Holt had said.

47.     Additionally, Cromwell arrived on the scene and began to give statements to Nelson, Foster, and Ripley.

48.     Cromwell reported that Holt was terminated from his employment on September 16, 2021.

49.     Cromwell stated that Holt did not take the termination well and that he had paced around with long drawn-out stares.

50.     Cromwell claimed that Holt stated that he was going to "come back and fuck things up," which was a false statement.

51.     Cromwell further stated that he had notified all Ayars employees that if Holt arrived on any worksite, that they were to call the office immediately, which was also a false statement.

52.     At no time had Holt been informed that he was not to come back to any Ayars place of businesses, despite Cromwell's statement otherwise.

53.     Holt's background was checked, and a call was made to Ayars to determine whether Holt had any known mental health issues, which all came back negative.

54.     Additionally, Sharon Halvorsen of Paramount Linens confirmed that Holt had come in the previous week and applied for position. Halversen further stated that Holt had come back that day inquiring about the position.

55.     As a result of these statements, Nelson, Hauser, and Ripley concluded there was no probable cause to seize Holt's firearm.

56.     Nelson, Hauser, and Ripley then turned their body cameras off as they formulated an agreement to place Holt under emergency protective custody in order to secure his firearm.

57.     With Clark's permission, Nelson, Hauser, Ripely, and Foster approached Holt and informed him that he was being taken to the Crisis Center involuntarily.

58.     Holt asked whether he was being arrested, Nelson informed him that he was neither arrested nor detained, but proceeded to handcuff Holt and place him in the rear of her patrol car.

59.     After removing Holt from the area, a search was conducted of Holt's vehicle.

60.     Holt's possessions were seized as a result of the search, including his firearm.

61.     Additionally, Gossard, Chavez, and Kirchhoff were all reinterviewed, for which their interviews were then recorded.

62.     As result of unlawful seizure and unlawful search by Nelson, Hauser, Clark, Ripley, Foster and Schmidt, and the false statements provided by Gossard and Cromwell, a criminal complaint was filed against Holt on September 27, 2021 for terroristic threats.

63.     Upon being released from the Crisis Center, Holt was detained and transported to Lancaster County Department of Corrections.

-8-

64.     On December 6, 2022, a jury trial commenced in the District Court of Lancaster County.

65.     On December 8, 2022, the case was presented to the jury and the jury returned a verdict of not guilty to the charges.

66.     The acts by Nelson, Hauser, Clark, Ripley, Foster, and Schmidt described above are part of an official policy or unofficial custom by the City of Lincoln Police Department.

67.     On information and belief, Defendant City of Lincoln had prior notice of Defendants Nelson, Hauser, Clark, Ripley, Foster, and Schmidt to the unlawful seizure of persons, unlawful seizure of property, and retaliation for exercising First Amendment rights, but took inadequate steps to train and supervise these employees, correct their abuse of authority, or implement meaningful procedures to discourage their unlawful abuse of power.

68.     Defendant City of Lincoln's failure to supervise and/or train the employees included failure to properly instruct them in the applicable provision of the Nebraska Revised Statues and proper investigative procedures.

69.     Defendant City of Lincoln tolerated, as an official institutional policy, practice, or unofficial custom, or authorized and ratified the systematic pattern by their employees of depriving persons of their right to liberty and property, with the intention of and/or having the effect of depriving Holt of his rights and privileges afforded them by the United States Constitution.

70.     The effect of this official policy or unofficial custom was to encourage the City of Lincoln employees, including Defendants Nelson, Hauser, Clark, Ripley, Foster, and Schmidt to deprive persons of their liberty and property without a warrant or probable cause.

71.     In doing so, the official policy or unofficial custom contributed to the unlawful seizure of Holt and his property, resulting in his injuries.

72.     Holt has sustained permanent physical and psychological trauma, has suffered great physical and psychological damage, which has caused him to miss work, leading to a loss of income.

## COUNT I
## SECTION 1983 CLAIM – CONSPIRACY TO SEIZE

73.     The allegations of paragraphs 1 through 72 are incorporated herein by reference.

74.     As described above, on September 24, 2021, Defendants Nelson, Hauser, Clark, Ripley, Foster, and Schmidt entered into an agreement to seize Holt unlawfully under Nebraska's Mental Health Commitment Act.

75.     Defendants Nelson, Hauser, Clark, and Ripley all knew Holt was not prohibited from possessing a firearm as a result of any criminal history or mental illness.

76.     No arrest warrant was obtained or issued for Holt to be seized and confined at the Crisis Center.

77.     Defendant Nelson ultimately seized Holt and informed him that he was going to the Crisis Center involuntarily.

78.     Defendant Nelson seized Holt against his will and detained him at the Crisis Center where he stayed until his release on September 27, 2021.

79.     Defendant Nelson's seizing Holt was unlawful and the direct and proximate cause of his injuries.

80.     The actions of Defendants Nelson, Hauser, Clark, Ripley Foster and Schmidt were performed under color state law and violated Holt's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

81.     The conduct of Defendants Nelson, Hauser, Clark, Ripley, Foster and Schmidt was willful and exhibited a flagrant disregard for Holt's federally secured due process rights. Accordingly, these defendants are liable to Holt under 42 U.S.C. § 1983.

**COUNT II**
**SECTION 1983 CLAIM – FALSE ARREST**

82.     The allegations of paragraphs 1 through 81 are incorporated herein by reference.

83.     As described above, Defendant Nelson unlawfully seized Holt.

84.     There was no probable cause to seize Holt under the Nebraska Mental Health Commitment Act.

85.     The acts of unlawfully seizing Holt by Defendant Nelson were the direct and proximate cause of physical and psychological injuries to Holt.

86.     The actions of Defendant Nelson were performed under color state law and violated Holt's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

87.     The conduct of Defendant Nelson was willful and exhibited a flagrant disregard for Holt's federally secured due process rights. Accordingly, Defendant Nelson is liable to Holt under 42 U.S.C. § 1983.

**COUNT III**
**SECTION 1983 CLAIM – CONSPRICACY AGAINST RIGHT TO BEAR ARMS**

88.     The allegations of paragraphs 1 through 87 are incorporated herein by reference.

89.     As described above, Defendants Nelson, Hauser, Clark, Ripley, Foster, and Schmidt entered into an agreement to seize Holt unlawfully under Nebraska's Mental Health Commitment Act to unlawfully seize Holt's firearm.

-11-

90.     Defendants Nelson, Hauser, Clark, Ripley, Foster and Schmidt were all aware Holt lawfully possessed the firearm, and there was nothing prohibiting or restricting Holt from possessing the firearm.

91.     There was no probable cause to seize Holt's firearm.

92.     No warrant was obtained or issued to seize Holt's firearm.

93.     By placing Holt under emergency protective custody, Defendant Hauser seized Holt's firearm, which was located on the passenger seat of Holt's car.

94.     Defendant Hauser's seizing Holt's firearm was unlawful and the direct and proximate cause of depriving Holt of his right to possess a firearm.

95.     The actions of Defendants Nelson, Hauser, Clark, Ripley Foster and Schmidt were performed under color state law and violated Holt's rights under the Second and Fourteenth Amendments to the United States Constitution.

96.     The conduct of Defendants Nelson, Hauser, Clark, Ripley Foster and Schmidt was willful and exhibited a flagrant disregard for Holt's federally secured due process rights. Accordingly, these defendants are liable to Holt under 42 U.S.C. § 1983.

## COUNT IV
## SECTION 1983 CLAIM – UNLAWFUL SEIZURE OF PROPERTY

97.     The allegations of paragraphs 1 through 96 are incorporated herein by reference.

98.     As described above, Defendant Hauser seized Holt's firearm, which was located on the passenger seat of Holt's car.

99.     There was no probable cause to seize Holt's firearm.

100.    No warrant was obtained or issued to seize Holt's firearm.

101.    The seizure of Holt's firearm was unlawful.

-12-

102.     The actions of Defendant Hauser was performed under color state law and violated Holt's rights under the Fourth and Fourteenth Amendment to the United States Constitution.

103.     The conduct of Defendant Hauser was willful and exhibited a flagrant disregard for Holt's federally secured due process rights. Accordingly, these defendants are liable to Holt under 42 U.S.C. § 1983.

## COUNT V
## SECTION 1983 CLAIM – RETALIATION

104.     The allegations of paragraphs 1 through 103 are incorporated herein by reference.

105.     As described above, Holt was exercising his First and Second Amendment Rights.

106.     Holt engaged in his First Amendment rights by expressing his opinions directly to Gossard in a public alleyway while Gossard was on his lunch break.

107.     Holt was also engaging in his Second Amendment rights by carrying his lawfully owned and possessed firearm openly in his vehicle.

108.     Defendant Nelson violated Holt's clearly established federal constitutional right by seizing him in retaliation for his exercise of his First and Second Amendment rights.

109.     Retaliation was a substantial or motivating factor for Defendant Nelson's decision to seize Holt.

110.     Defendant Nelson would not have seized Holt under the guise of emergency protective custody but for her retaliatory motive.

111.     Upon information and belief, similarly situated individuals who were not engaged in the same sort of protected activity as Holt was not seized under the guise of emergency protective custody.

-13-

112.    The actions of Defendant Nelson exhibited deliberate indifference and reckless disregard to Holt's rights, were performed under the color of state law, and violated Holt's rights under the First and Fourteenth Amendments to the United States Constitution.

113.    The conduct of Defendant Nelson was willful, wanton, unlawful, and exhibited a flagrant disregard for Holt's federally secured rights. Accordingly, Defendant Nelson is liable to Holt under 42 U.S.C. § 1983.

## COUNT VI
## SECTION 1983 CLAIM – MALICIOUS PROSECUTION

114.    The allegations of paragraphs 1 through 113 are incorporated herein by reference.

115.    As described above, on September 27, 2021, a criminal complaint was filed with the County Court of Lancaster County against Holt, charging Holt with terrorist threats under the Nebraska Revised Statutes.

116.    On December 8, 2022, Holt was acquitted of the criminal charges after a jury trial found him not guilty.

117.    The charges filed were without probable cause.

118.    Defendants Nelson, Hauser, Clark, Ripley, Foster, and Schmidt acted maliciously to deprive Holt of his firearm, and retaliate against him for exercising his First Amendment rights, and was for a purpose other than for any criminal wrongdoing.

119.    The conduct of Defendants Nelson, Hauser, Clark, Ripley, Foster, and Schmidt deprived Holt of his liberty as he was detained in pretrial detention for over 8 months.

120.     The actions of Defendant Nelson, Hauser, Clark, Ripley, Foster, and Schmidt exhibited deliberate indifference and reckless disregard to Holt's rights, were performed under the color of state law, and violated Holt's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

121.    The conduct of Defendant Nelson Hauser, Clark, Ripley Foster, and Schmidt was willful, wanton, unlawful, and exhibited a flagrant disregard for Holt's federally secured rights. Accordingly, these Defendants are liable to Holt under 42 U.S.C. § 1983.

## COUNT VI
## SECTION 1983 CLAIM – DELIBERTE INDIFFERENT POLICIES, PRACTICE, CUSTOMS, TRAINING AND SUPERVISION

122.    The allegations of paragraphs 1 through 121 are incorporated herein by reference.

123.    As described above, the actions of Defendants Nelson, Hauser, Clark, Ripley, Foster, and Schmidt in engaging in the false arrest, conspiracy to commit false arrest, conspiracy to seize property, unlawful seizure of property, malicious prosecution, and retaliation for exercising First Amendment rights were pursuant to an official policy or unofficial custom of the City of Lincoln Police Department were performed under color of state law and violated Holt's rights guaranteed by the Fourteenth Amendment to the United States Constitution.

124.    The actions of Defendants Nelson, Hauser, Clark, Ripley, Foster, and Schmidt in engaging in the false arrest, conspiracy to commit false arrest, conspiracy to seize property, unlawful seizure of property, malicious prosecution, and retaliation for exercising First Amendment rights against Holt were the direct and proximate cause of serious and ongoing physical and psychological injuries to Holt.

125.    The conduct of Defendants Nelson, Hauser, Clark, Ripley, Foster, and Schmidt was willful and exhibited a flagrant disregard for Holt's federally secured due process rights. Accordingly, these defendants are liable to Holt under 42 U.S.C. § 1983.

## COUNT VII
## VIOLATION OF NEBRASKA'S MENTAL HEALTH COMMITMENT ACT

126.    The allegations of paragraphs 1 through 125 are incorporated herein by reference.

127.    Defendant Nelson unlawfully seized Holt under the guise of the emergency protective custody.

128.    There was no probable cause to seize Holt under the Nebraska Mental Health Commitment Act.

129.    Holt was not mentally ill.

130.    Holt was not dangerous and had made no demonstration of being dangerous to anyone.

131.    The actions of Defendant Nelson were performed under color state law and violated Holt's rights under Nebraska's Mental Health Commitment Act.

132.    The conduct of Defendant Nelson was willful and exhibited a flagrant disregard for Holt's state rights. Accordingly, Defendant Nelson is liable to Holt under Neb. Rev. Stat. 71-962.

<u>**COUNT IX**</u>
<u>**DEFAMATION**</u>

133.    The allegations of paragraphs 1 through 132 are incorporated herein by reference.

134.    Defendants Gossard and Cromwell gave oral statements falsely stating that Holt committed a crime to Defendants Nelson, Hauser, Clark, Ripley, and Foster, which resulted in criminal charges being filed against Holt.

135.    Holt committed no crime and there was no probable cause for the charge against Holt.

136.    The statements of Defendants Gossard and Cromwell were slanderous per se.

137.    The statements of Defendants Gossard and Cromwell were false.

138.    The conduct of Defendants Gossard and Cromwell actions caused Holt injuries.

-16-

139. The actions of Defendant Gossard and Cromwell were performed under the scope of employment for Ayars, and accordingly, these Defendants and Defendant Ayars are liable to Holt under Nebraska state law.

**COUNT X**
**MALICIOUS PROSECUTION**

140. The allegations of paragraphs 1 through 139 are incorporated herein by reference.

141. As described above, on September 27, 2021, a criminal complaint was filed with the County Court of Lancaster County against Holt, charging Holt with terrorist threats under the Nebraska Revised Statutes.

142. On December 8, 2022, Holt was acquitted of the criminal charges after a jury trial found him not guilty.

143. The charges filed were without probable cause.

144. Defendants Gossard and Cromwell acted maliciously in initiating the prosecution against Holt to deprive Holt of his liberty and retaliate against him for exercising his First Amendment rights, and was for a purpose other than for any criminal wrongdoing.

145. The conduct of Defendants Gossard and Cromwell actions deprived Holt of his liberty as he was detained in pretrial detention for over 8 months, and cause him injuries.

146. The actions of Defendant Gossard and Cromwell exhibited deliberate indifference and reckless disregard to Holt's rights, were performed under the scope of employment for Ayars, and violated Holt's rights.

147. The conduct of Defendant Gossard and Cromwell were conducted under the scope of their employment, and accordingly, these Defendants and Defendant Ayars are liable to Holt under Nebraska state law.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully prays for judgment in his factor and against

Defendants on all counts and for the following relief:

A.   Compensatory damages against all defendants jointly and severally in an amount
     to be determined at trial;

B.   Punitive damages against all defendants as allowed by law in an amount to be
     determined at trial;

C.   Pre- and post-judgment interest as allowed by law;

D.   Reasonable costs and attorneys fees incurred herein in accordance with; and

E.   For such further relief that the Court may deem just and equitable.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all counts so triable.

## REQUEST FOR PLACE OF TRIAL

Plaintiff requests Lincoln as the place for trial.

**DATED**: December 8, 2023

Respectfully submitted,

Jeffrey L. Holt, Jr.

BY:  /s/ *Oluseyi O. Olowolafe*
     Oluseyi O. Olowolafe
     NE Bar Number: 26896
     *Attorney for Plaintiff*
     Olowolafe Law Firm, LLC
     1201 Golden Gate Drive
     Papillion, NE 68046
     Telephone: (402) 995-9554
     Email: seyi.olowolafe@ololawfirm.com